Berger *v.* Kraisman, Appellant.

Argued November 13, 1953.   Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Reuben Singer,* with him *John R. Meade* and *Meade & Singer,* for appellant.

*Albert S. Fein,* with him *Benjamin H. Levintow,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 11, 1954:

Samuel Kraisman, feeling the flood waters of insolvency rising about him, looked for a financial craft which would carry him to the solid ground of a new business where he could begin life afresh in some new and profitable enterprise, unencumbered by past mistake or misfortune. With two others (Albert Merkin and Nathan Korff) he organized a corporation which issued three certificates of stock of 50 shares each, one going to Merkin, another to Korff and the third to his (Samuel Kraisman's) daughter Dorothy Meil.

Upon receiving her certificate Mrs. Meil immediately executed a power of attorney to her father. Still later she transferred, without consideration, the stock to her brother Bernard Kraisman. One year later Nathan Korff transferred his 50 shares to the same Bernard Kraisman. Within the next year Bernard, who was only 21 years of age, acquired the remaining 50 shares of stock and he thus became the sole owner of the Colonial Furniture Company. His father Samuel Kraisman became the president of this organization.

Feeling that he had built himself a firm fortification of immunity from the attack of his creditors, Samuel Kraisman now went into voluntary bankruptcy. In his application he did not list as assets any of the Colonial Furniture stock. While society and the law laud the resolution of any one who has failed in business to build anew, such resolution cannot be founded on the unpaid debts of legitimate creditors. One cannot rob Peter to set up business with Paul. A study of the record in this case reveals a crafty, even if awkwardly executed, design on the part of Samuel Kraisman to bury all his financial difficulties in the pit over which was built the structure of the Colonial Furniture Co. The stock issued to Dorothy Meil was not paid for by her, so that she in truth was not vested

with a title that she could transfer to her brother who, in his turn, paid nothing for it. The stock transferred by Nathan Korff to Bernard Kraisman was paid for by the Colonial Furniture Company so that Bernard had no legitimate title to this stock either.

It is obvious that in these transactions Dorothy and Bernard were figures of straw being moved by and in the interests of their father. At the time of the incorporation of the Colonial Furniture, Bernard was only 19 years of age and, therefore, could not be utilized as a business confederate. However, only 6 days after he attained his majority, the transfer of the stock from his sister was effected. This highly suspicious circumstance and others induced the trustee in bankruptcy to question all of Samuel Kraisman's dealings with the Colonial Furniture Company and he filed a bill in equity, charging Kraisman with illegally scheming to hinder, delay and defraud his creditors. He prayed the Court to order Bernard Kraisman to hold the 150 shares of stock as trustee for the bankrupt.

The defendant denied the trustee-plaintiff's averments and attempted at the trial before the Chancellor to justify his possession of the stock in his name. The Chancellor found one transfer (that of Merkin to Bernard) to be a legitimate transaction; he found, however, the Dorothy Meil and the Nathan Korff transactions fraudulent and decreed that the 100 shares embraced in these transactions be assigned to the plaintiff-trustee.

In his appeal to this Court the defendant asserts that the only issue involved is "upon whom rests the burden of proving the fraudulent transactions alleged in the plaintiff's Complaint where the defendant filed a responsive Answer which denied the averments of fraud . . . Is there a presumption of fraud in the issuance of stock from a father to a daughter, or was the

burden upon the plaintiff to prove all of the elements of fraud by clear, precise and indubitable evidence?"

There is no presumption that transactions between parents and children are per se fraudulent. In fact, the law permits a debtor to prefer one creditor over another but where kinship is involved, the relationship "is a circumstance that should weigh in the determination whether the intention was to pay or secure a debt, or merely to use the debt as cover for a fraudulent conveyance." (Glenn on Fraudulent Conveyances and Preferences, sec. 289a, p. 491-494).

The answer to the appellant's question as to who had the burden of proof is that it fell on him because Samuel Kraisman was admittedly insolvent when Dorothy Meil, through a cloaked maneuver, came into possession of stock which obviously her father had acquired.

"Every conveyance made and every obligation incurred by a person who is, or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." (Section 4, Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, No. 379, Sec. 4; 39 P.S. sec. 354.) As we held in *Com. Trust Co. v. Cirigliano*, 352 Pa. 108, the burden in a situation of this kind is on the insolvent debtor to show by "clear and satisfactory testimony that full and fair consideration was paid."

Did Dorothy Meil pay for the stock when it came to her through the intervention of her father, and did Bernard pay for the stock when he obtained it from his sister? The defendant contended that Dorothy Meil received the stock in payment of a loan of $500 which she had made to her father, and that Bernard came into possession of the stock because of a loan

made by him to his sister. The Chancellor placed no credence in this explanation, nor do we. An excerpt from her testimony reveals how her credibility completely foundered in the stream of cross-examination: "Q. Your father, Samuel Kraisman, testified that you loaned him $500. Do you remember what date that was? A. It was about 1947. Q. About 1947? A. Yes. Q. How did you loan it to him? A. I gave it to him in cash. Q. Where did you get the cash? A. We had it. Q. Where did you have it? A. In the house. Q. Well, how long had you had it? A. Oh, I don't know. We always had some around. Q. Did you always keep $500 around? A. Sometimes it would be less, sometimes it would be a little more. Q. What kind of money was that? Was it from the business? A. Well, my husband at times needed it for business, or just had it. Q. Was it the money that he took in for the business, or what? A. No, it was our own money. Q. It was your own money? A. Yes. Q. Where did you get this money? A. Well, at the time we had it. I don't know. Like I say, I never bothered with it too much. I knew what was there. Q. Where did you keep it in the house? A. No special place. My husband usually took care of it. Q. Well, did he keep it in his pants pocket or what? A. No, he didn't carry it around. He must have kept it in a drawer, or—Q. Do you remember which drawer it was? A. No. Q. Was it any particular drawer? A. It probably was. I mean, he must have kept it in one place. I never—Q. Do you know where it was? A. I knew we had it. I didn't know just—I never thought to say just which drawer is it in. . . Q. Did your husband give it to you? A. I don't remember just how it came about. Q. Well, just how did it come about? A. I don't remember just how he handed it to me or gave it to me or told me where it was, whether he took it out and gave it to me from where he kept it,

or how it was. I know I had the cash and I gave it to him."

The learned Chancellor most excellently summed up the case of the defendant in this regard as follows: "Their account of loans between father, sister and brother we find to be a complete fiction, hastily manufactured, poorly narrated and absurdly transparent. No loans were made, no debts were satisfied, and no purpose served by the transfers, save an effort to place the assets of Samuel Kraisman beyond the reach of his creditors."

The transfer of stock from Nathan Korff to Bernard is also not supportable since, as already indicated, the stock was purchased with funds of the corporation.

Decree affirmed. Costs to be paid by appellant.